**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

LISA NOBLES and JASON ATCHISON, )
individually, and on behalf of a class of )
others similarly situated, )
           )
    Plaintiffs, )  Case No. 2:10-CV-04175-NKL
           )
    vs. )
           )
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, )
           )
    Defendant. )

**ORDER**

Pending before the Court are Plaintiffs Lisa Nobles' and Jason Atchison's ("Plaintiffs") Motion for Rule 23 Certification of Missouri and Oklahoma Classes and for Conditional Collective Action Certification [Doc. # 72], and Defendant State Farm Mutual Automobile Insurance Company's Motion to Strike [Doc. # 89] and Motion to Dismiss [Doc. # 110].

For the following reasons, the Court DENIES State Farm Mutual's Motion to Strike [Doc. # 89], GRANTS Plaintiffs' Motion for Class and Collective Certification [Doc. # 72], and DENIES State Farm Mutual's Motion to Dismiss [Doc. # 110].

**I. Background**

The following facts are taken from Plaintiffs' Second Amended Complaint [Doc. # 79] and are assumed true for the pending motions before the Court.

1

State Farm Mutual is a mutual benefit company that provides insurance products and services to consumers nationwide. Its principal place of business is Bloomington, Illinois. State Farm Mutual also maintains operations centers in several other states across the country, including Alabama, Arizona, Colorado, Florida, Georgia, Indiana, Maryland, Minnesota, Missouri, Nebraska, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia, Washington, and Wisconsin. Plaintiff Lisa Nobles previously worked as a claims processor at State Farm Mutual's operations center in Columbia, Missouri, and is a resident of Missouri. Plaintiff Jason Atchison worked as a claims representative in State Farm Mutual's operations center in Tulsa, Oklahoma, and is a resident of Oklahoma.

Plaintiffs Nobles and Atchison claim that State Farm Mutual encourages its hourly employees who are not exempt from the protection of the FLSA, 29 U.S.C. § 213, to view themselves as salaried workers. Other positions held by non-exempt, hourly employees who are similarly situated with Plaintiffs include without limitation: Claims Service Assistant, Claims Processor, Claims Representative, Underwriter, Auditor, and Account Representative (collectively, "employees"). Plaintiffs allege that State Farm Mutual's written policy is to pay these employees on a standard number of hours–typically 38.75 hours per week, plus any scheduled overtime–regardless of the number of hours worked. Plaintiffs often work over forty hours in a workweek in addition to routinely working before and after shifts and during lunch breaks.

State Farm Fire and Casualty Company ("State Farm Fire") is a wholly owned

subsidiary of State Farm Mutual. State Farm Mutual does not recognize strict corporate distinctions, and refers to State Farm Fire as a "department" of State Farm Mutual. Statements on State Farm Mutual's website refer to State Farm Fire as simply "State Farm" and also refer to State Farm Mutual and its subsidiaries, including State Farm Fire, as a single company. The President and CEO of State Farm Fire also serves as the chairman and CEO of State Farm Mutual.

Employees of both State Farm Fire and State Farm Mutual use the same timekeeping system and interface, and timekeeping records of both State Farm Fire and State Farm Mutual are stored in a central database. State Farm Fire employees work at operations centers owned by State Farm Mutual. State Farm Mutual employees also work at these operations centers. State Farm Fire employees are subject to the same human resources policies and procedures that govern employees of State Farm Mutual, in particular, the pay and timekeeping policy. A single human resources policy manual governs employees of both State Farm Mutual and State Farm Fire. Moreover, State Farm Mutual's human resources department is responsible for servicing and managing employees and supervisors of State Farm Fire, including interviewing and hiring new State Farm Fire employees, and handling employee complaints, disciplinary actions, and supervisor training of State Farm Fire. Thus, Plaintiffs allege that State Farm Fire employees are also the employees of State Farm Mutual.

Plaintiffs state that all employees at State Farm Mutual's operations centers nationwide–including employees of State Farm Fire–were subject to the same written polices and practices, except for the employees who worked in California. Plaintiffs contend that

they are entitled to the rights, protections, and benefits provided under the FLSA, the applicable Missouri Minimum Wage Law, and the applicable Oklahoma labor statutes. They pray for recovery of lost wages and compensatory and liquidated damages, as well as any other remedy permitted by applicable law.

In Count I, Plaintiffs bring their FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b). In Counts II and III respectively, Nobles asserts a Missouri Minimum Wage Law claim, and an unjust enrichment claim, individually and on behalf of others similarly situated in a Rule 23 class action. In Count IV, Atchison brings an Oklahoma wage law claim individually and as a Rule 23 class action.

Plaintiffs' proposed Rule 23 classes are: (Count 1 - Missouri minimum wage) "all State Farm employees paid using the exception hourly system who worked in operation centers within the State of Missouri since August 9, 2008"; (Count II - unjust enrichment/quantum meruit) "all State Farm employees paid using the exception hourly system who worked in operation centers within the State of Missouri since August 9, 2005"; and (Count III - minimum wage) "all State Farm employees paid using the exception hourly system who worked in operation centers within the State of Oklahoma since December 15, 2007." Plaintiffs' FLSA Class is defined as: "all State Farm employees paid using the exception hourly system who worked in operations centers nationwide (excluding California) at any time during the last three years." [Doc. #72, at 9]. Plaintiffs use the term "State Farm" to refer to State Farm Mutual and State Farm Fire.

## II.     State Farm Mutual's Motion to Strike

State Farm Mutual asks that the Court strike the testimony of Bradley Wilders and Peter Rupp contained in Plaintiffs' Exhibits M and O [Docs. ## 72-13, 72-15]. According to State Farm Mutual, the sworn declarations made by Wilders and Rupp are expert opinion testimony, which are allegedly flawed and not disclosed in accord with Federal Rule of Civil Procedure 26(a)(2). Moreover, State Farm Mutual states that Wilders, one of Plaintiffs' attorneys, and Rupp, an employee of one of Plaintiffs' lawyers, have "intractable conflicts of interest that render their testimony inadmissible as a matter of law." [Doc. # 89].

The data summarized by Wilders and Rupp was provided by State Farm Mutual to Plaintiffs per Plaintiffs' request for a sample of computer event logs and other data. In their declarations, Wilders and Rupp do not represent that they are experts. They merely compiled State Farm Mutual's logon and logoff data: determinations of when a user first logged on and logged off in a day and the difference between the two, accounting for an unpaid lunch period, and comparing weekly logon hours to the number of hours paid by State Farm Mutual in that week. The Court has reviewed the data in the security log file. [Doc. # 96-1]. Given the ubiquitous use of computer technology by laypeople in today's society, the Court does not find that the raw data provided by State Farm Mutual is so specialized as to render user names, and first and last logon and logoff times inaccessible to a non-expert. The data clearly states "user initiated logoff" and provides a time stamp for that event; the data also indicates the first "successful logon" following a prior "user initiated logoff." Indeed, State Farm Mutual's own expert does not dispute that Wilders and Rupp accurately identified the logon and logoff times of individual employees. [Doc. # 88-1]. Moreover, the Court finds

that State Farm Mutual fails to identify how Wilders's and Rupp's basic mathematical calculations are incorrect. State Farm Mutual's arguments on the relevance of the calculations derived from the method employed by Wilders and Rupp to summarize the data are directed more towards the weight to be given to their summaries, and not to their sufficiency for the purposes of Plaintiffs' Motion for Class Certification.

The Court finds that the declarations of Wilders and Rupp are admissible under Rule 1006. Fed. R. Evid. 1006 ("The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."). There are no conflicts of interest that render their declarations inadmissible for the Court's consideration here.

## III.    Plaintiffs' Motion for Class Certification and FLSA Collective Certification

As a preliminary matter, State Farm Mutual argues in its Motion to Dismiss that Plaintiffs lack standing to bring claims based on joint employer status, that Plaintiffs have also failed to allege the elements of joint employer or single enterprise status, and that State Farm's motions should be considered before Plaintiffs' motion for class certification. However, "class certification issues are . . . 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). Thus, the Court first addresses Plaintiffs' Motion for Rule 23 Certification of Missouri and Oklahoma Classes and for Conditional Collective Certification [Doc. # 72] before addressing State Farm Mutual's Motion to Dismiss Joint Employment Claims in Plaintiffs' Second Amended Complaint.

[Doc. # 110].

## A. Rule 23 Class Certification

A motion for class certification involves a two part analysis. First, the movant must demonstrate that the proposed class satisfies the requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable,
(2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Second, Plaintiffs must demonstrate that the proposed class fits into one of the three categories identified in Rule 23(b).

Plaintiffs bear the burden of showing that the Rule 23 requirements are met and that the class should be certified. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). To determine whether class certification is appropriate, the Court must conduct a limited preliminary inquiry, looking behind the pleadings. *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). "In conducting this preliminary inquiry, however, the Court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs['] general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Id.* at 566. In considering class certification motions, the Court liberally construes Rule 23(a) and does not resolve the merits of the dispute. *See Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003); *In re Control Data Corp. Sec. Litigation*, 116 F.R.D. 216, 219 (D. Minn. 1986), *rev'd on other grounds*, 933 F.2d 616 (8th Cir. 1991).

Plaintiffs move for Rule 23 certification of two classes: one based on claims under the Missouri Minimum Wage Law, with Nobles as the representative plaintiff, and one based on claims under Oklahoma Wage Law, with Atchison as the representative plaintiff. Because the arguments presented by the parties are directed to both classes, the Court addresses the issue of certification jointly unless otherwise noted.

### i.     Federal Rule of Civil Procedure 23(a)

#### a.     Numerosity

State Farm Mutual does not dispute that Plaintiffs' putative classes satisfy the numerosity requirement. Plaintiffs allege that there are at least 600 current State Farm Mutual "exception hourly" employees in Missouri, and that there are at least 500 current State Farm Mutual "exception hourly" employees in Oklahoma. Former employees, who are not accounted for in these figures, will increase the size of each of these putative classes. If all potential class members filed separately, there would be over one thousand individual actions, each relying on identical conduct of State Farm Mutual. It would be impracticable for the Court to manage all of these cases because joinder of all of the members would be impracticable.

#### b.     Commonality

The commonality requirement of Rule 23(a)(2) is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). To determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind

the pleadings. *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). In *Blades*, the Eighth Circuit authorized district judges to inquire into the merits when a factual dispute necessary for deciding class certification overlaps with the merits, but only insofar as necessary to "determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations are true, to make out a prima facie case for the class." *Id.*

The kernel of Plaintiffs' claims in both classes rests on their allegation that they were not paid for all of the work they performed, and that it was State Farm Mutual's "exception" timekeeping system that caused the under payment. This is a central issue to all class member claims. To underscore their allegation that State Farm Mutual's records are inaccurate, Plaintiffs assert that State Farm Mutual's pay and timekeeping policy, as written, does not comply with the Department of Labor's regulations. This is sufficient to establish commonality. *Wal-Mart Stores, Inc. v. Dukes*, --- S.Ct. ----, No. 10-277, 2011 WL 2437013 (June 20, 2011) ("[Class members'] claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Because Plaintiffs' claim is based on the written policy itself, not any deviant actions by State Farm Mutual's managers, this case does not give rise to the concerns expressed by the Supreme Court in *Dukes*. There, the plaintiffs failed to "identif[y] a common mode of exercising discretion that pervades the entire company" in their Title VII discrimination class action claim. *Dukes*, 2011 WL 2437013, at *9. In contrast, Plaintiffs have at least alleged

9

a plausible claim that satisfies the *Dukes'* standard.

Although State Farm Mutual contends that its written policy complies with federal regulations, it is not appropriate at the class certification stage to resolve that question because it goes exclusively to the merits of Plaintiffs' claims.

The commonality requirement of Rule 23(a) is satisfied.

### c. Typicality

The third requirement of Rule 23(a)(3) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). Typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). The burden is "easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (ruling that plaintiffs satisfied the typicality requirement even though they carried different mortgage instruments; important inquiry surrounded mortgage servicer's over-escrowing of funds).

State Farm Mutual argues that Plaintiffs have failed to establish the typicality requirement because the motivation of putative class members for working beyond scheduled work hours differ based on varying job duties. According to State Farm Mutual, the named plaintiffs are thus not typical of their respective classes because proof of a violation requires individualized inquiry. However, as noted above, Plaintiffs allege that State Farm Mutual's written pay and timekeeping policy caused State Farm Mutual to inadequately compensate Plaintiffs. Regardless of the employee's duties, State Farm Mutual's written policy did not

accurately record how long they actually worked, and therefore they were not paid for all time worked, including overtime.

Thus, Plaintiffs have met their burden of establishing that other members of the proposed classes have the same or similar *grievances* as the named Plaintiffs.

### d.    Adequacy

The final requirement of Rule 23(a) is that the class representative and class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4). The purpose of the adequacy requirement is to ensure that there are no potential "conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). Plaintiffs allege that Nobles' and Atchison's "claims are co-extensive with those of the proposed classes – namely, they seek damages as a result of State Farm Mutual's exception-based payroll policy." [Doc. # 72, at 14]. Plaintiffs also add that they "have already demonstrated that they will vigorously prosecute the interests of the class by hiring counsel with experience prosecuting wage and hour class actions and by responding to written discovery and sitting for depositions by State Farm." *Id.* State Farm Mutual argues that Plaintiffs are inadequate class representatives because (1) they are unable to represent the interests of employees who have different job titles and functions, (2) have a conflict of interest with class members who worked in supervisory positions, (3) have a conflict of interest with putative class members who "never experienced a gap between computer log on time and paid time," and (4) failed to adequately investigate their class claims. [Doc. # 88, at 23].

11

The Court does not find merit in State Farm Mutual's arguments for the following reasons. First, Plaintiffs' claims do not rest on the specific functions of their job positions or duties, but on their allegation that State Farm Mutual's written pay and timekeeping policy–which applies to all class members–inaccurately records the actual number of hours worked by State Farm Mutual employees such that they are not legally compensated. Thus, the Court does not find that because Plaintiffs are not familiar with the duties of other positions that they failed to adequately investigate their class claims.

Next, although Plaintiffs may have explained in depositions that they did not record the time they worked in excess of their regular schedules because of something a supervisor said, that does not mean that Plaintiffs' interests are in conflict with class members who are supervisors. Indeed, whether Plaintiffs recorded their time worked is not dispositive of their claims.

Finally, although the limited sample of computer data provided by State Farm Mutual to Plaintiffs may show that some putative class members may have been adequately paid, this does not bear on whether Plaintiffs' interests are adverse to the class members. State Farm Mutual fails to explain to the Court what the conflict is and how it adversely affects those class members who have no damages.

The Court finds that Plaintiffs have vigorously pursued their claims and will continue to do so on behalf of their respective classes. Thus, Plaintiffs have met their burden of establishing adequacy of representation.

### ii.  Federal Rule of Civil Procedure 23(b)

In addition to meeting the requirements of Rule 23(a), a case must also meet the requirements of one of the subdivisions of Rule 23(b) in order to proceed as a class action. "Plaintiffs seek class certification under the third alternative of Rule 23(b)." [Doc. # 72, at 14]. Rule 23(b)(3) provides that a class should be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts commonly refer to these two requirements as "predominance" and "superiority." *See Pichler v. UNITE*, 228 F.R.D. 230 (E.D. Pa. 2005).

The predominance requirement of Rule 23(b)(3) is similar to Rule 23(a)(3)'s typicality requirement. *Amchem Prods., Inc.*, 521 U.S. at 623. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* Looking at the issues of fact and law presented by Plaintiffs' and the putative class members' claims reveals a critical inquiry they have in common: whether State Farm Mutual's written pay and timekeeping policy caused employees to be underpaid.

State Farm Mutual contends Plaintiffs fail to meet the predominance requirement because the "policy" Plaintiffs take issue with is an unwritten "policy-to-violate the [written] policy." [Doc. # 88, at 25]. However, Plaintiffs' claims are not premised on an undocumented practice of State Farm Mutual to violate the written pay and timekeeping policy; rather, it is premised on the written policy itself. And the allegation is that as a result of that written policy, State Farm has not met its affirmative obligation to pay minimum wage

13

for hours actually worked.

State Farm Mutual next argues that Plaintiffs lack common evidence to demonstrate liability to all class members, and thus Plaintiffs cannot demonstrate predominance. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) ("To determine whether common questions predominate, a court must conduct a limited preliminary inquiry . . . . to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class."). For example, State Farm Mutual asserts that Plaintiffs' preliminary analysis of sample log in and log off data is insufficient to demonstrate that class members worked over breaks, but rather, the only way to determine if an employee worked over an unpaid break is to ask each putative class member. Accordingly, State Farm Mutual argues that individual issues predominate and thus Plaintiffs have not satisfied the predominance requirement. Plaintiffs admit that the log on and log off records do not capture when an employee goes to lunch. [Doc. # 72, at 25]. However, Plaintiffs have represented to the Court that the log in and log off times from putative class members' computers or telephones exhibit the type of "common" evidence available to demonstrate that the minimum number of hours actually worked by class members; and that data from State Farm Mutual's payroll will demonstrate how many hours during respective weeks class members were compensated. The Court does not evaluate the quality of the evidence presented by Plaintiffs at this stage of the litigation. Should full discovery bear out that such types of common evidence cannot resolve all of the class members' claims, a division of the classes into sub-classes, re-definition of the classes, or de-

14

certification of the classes may then be appropriate.

Relatedly, State Farm Mutual argues that log in and log off data is not evidence of the actual times worked by class members because, for example, class members may have engaged in non-work activities after logging in.  According to State Farm Mutual, the Court should deny class certification because of the necessary individualized inquiry into each employee's activities during the gaps of time between logging in and commencing work.  However, State Farm Mutual has failed to present to the Court any evidence that Plaintiffs engaged in non-work-related activities during time logged in.  Indeed, the Eleventh Circuit affirmed the denial of class certification in *Babineau v. Federal Express Corp.*, 576 F.3d 1183 (11th Cir. 2009), because FedEx had offered statements and testimony of a number of employees regarding "non-work-related activities that took place during the gap periods and the various personal reasons" why employees arrived early to work or stayed late.  *Id.* at 1192.  Without such  similar evidence, the Court finds that the log in and log off data is sufficient common evidence to satisfy a prima facie case for the class.  There are also common questions of law that underlie each of the class members' claims.

Further, a class action is clearly a superior method for determining the common factual and legal issues in dispute.  If all potential class members filed separately, there would be thousands of individual actions each relying in part on identical conduct by State Farm Mutual, with many of them asserting relatively small claims.  Given the large number of potential plaintiffs and the commonality of their claims, certifying the class will allow a more efficient adjudication of the controversy than would individual adjudications.

This class action is certified under Rule 23(b)(3).

### iii. Notice to Class Members of Missouri and Oklahoma Classes

Plaintiffs have provided a copy of their proposed notices for the Missouri and Oklahoma classes. [Docs. # 72-17, # 72-18]. The Court finds that Plaintiffs' proposed notices satisfy Federal Rule of Civil Procedure 23(c)(2).

The Court authorizes Plaintiffs to publish an internet website where class members may obtain more information about the lawsuit. Plaintiffs are directed to modify the notice forms attached to their Motion to reflect the website's address. Plaintiffs are also directed to modify the notice forms to include all contact information and dates, consistent with this Order. A copy of the notice must be filed with the Court prior to its dissemination, and Plaintiffs shall tell the Court when the notices are issued.

The Court authorizes Plaintiffs to disseminate its notice to potential class members at their last known mailing and e-mail addresses. The Court also orders State Farm to conspicuously post the notice in the break rooms at its Operations Centers until the opt-out period closes.

### B. FLSA Conditional Certification

### i. Legal Standard

Section 216(b) of the Fair Labor Standards Act provides that an employee may bring an action for himself and other employees "similarly situated." 29 U.S.C. § 216(b). A 216(b) collective action differs significantly from class actions under Rule 23 of the Federal Rules of Civil Procedure. A primary difference between the two is that, under § 216(b), a similarly

situated employee must "opt-in" to the collective action to be bound by the proceeding's outcome whereas, under Rule 23, a similarly situated plaintiff must "opt-out" to avoid being similarly bound. 29 U.S.C. § 216(b); Fed. R. Civ. P. 23. One consequence of this difference is that standards governing class claims under Rule 23, including those related to numerosity, do not apply to collective action claims under the FLSA. *See Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp. 2d 870, 887 (N.D. Iowa 2008) ("There is no doubt that the opt-in/opt-out distinction represents 'a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by [the] FLSA.'") (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975)); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure.").

Federal courts have used varying standards to determine whether potential opt-in plaintiffs are "similarly situated" under § 216(b). *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005). Though the Eighth Circuit Court of Appeals has not indicated which standard should be used, a majority of the district courts in the Eighth Circuit use the two-step analysis adopted in *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir.1995). *See, e.g.*, *Davis*, 408 F. Supp. 2d 811; *Bouaphakeo*, 564 F. Supp. 2d 870; *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014 (E.D. Mo. 2010); *Luiken v. Domino's Pizza, LLC*, Civil No. 09-516 (DWF/AJB), 2010 WL 2545875 (D. Minn. June 21, 2010); *Dietrich v. Liberty Square L.L.C.*, 230 F.R.D. 574 (N.D. Iowa 2005); *Helmert v.*

*Butterball, LLC*, No. 4:08CV00342 JLH, 2009 WL 5066759 (E.D. Ark. Dec. 15, 2009).

Under this two-step process, the plaintiff first moves for collective action certification for notice purposes. The plaintiff's motion for certification is typically filed at an early stage of the litigation thus requiring a lenient evaluation standard and typically resulting in conditional certification of a representative class. *Mooney*, 54 F.3d at 1213-14; *Grayson v. K Mart*, 79 F.3d 1086, 1096 (11th Cir.1996) (noting that the "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class action standards). At this early stage of litigation, the Court does not reach the merits of the plaintiff's claims. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y.1997) (citation omitted). Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to "opt-in." *Davis*, 408 F. Supp. 2d at 815.

At the second step of the process, the defendant may move to decertify the class. This is typically done after the close of discovery when the record is more developed. *Id.*

In some cases, the Court will skip the "notice" step and move directly to a second-step evaluation of a plaintiff's motion for conditional class certification. *Pfohl v. Farmers Ins. Group*, No. CV03-3080 DT (RCX), 2004 WL 554834, *3 (C.D. Cal. 2004) (court proceeded directly to the second stage of certification where parties did not dispute that discovery had been undertaken); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (applying a stricter standard where discovery had been completed).

In the instant case, the parties have conducted preliminary discovery involving State Farm Mutual's written policies, depositions of State Farm Mutual's managers, and log in and

log off data of a sample of putative class members. State Farm Mutual argues that because it has produced numerous pages of documents and large quantities of data, "significant discovery" has taken place such that the Court should apply an "intermediate" standard, which requires the Court to "evaluat[e] all the facts that have thus far been placed before it." *Bunyan v. Spectrum Brands, Inc.*, No. 07-0089, 2008 WL 2959932 (S.D. Ill. July 31, 2008) (citing *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 895 (N.D. Iowa 2008)). However, even if the Court were to adopt State Farm's approach, the outcome would be the same, given the Court's conclusion that class certification is appropriate under Fed. R. Civ. P. 23. Therefore, the Court will assume, without deciding, that a higher standard of review is appropriate but also concludes that the Plaintiffs are "similarly situated" as that term is used in the FLSA.

### ii.    Notice to Potential Collective Members

FLSA violations are subject to a two-year statute of limitations unless the violation is willful, in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a). *Redman v. U.S. W. Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir.1998) ("An action is commenced under the FLSA when a party files suit. In the case of a collective action under the FLSA, the action is commenced when a party files his or her written consent to become part of the action."). *See also*, *Bolton v. Sprint/United Mgmt. Co.*, No. 05-2361-JWL, 2006 WL 1789142 (D. Kan. June 29, 2006). Plaintiffs allege that State Farm Mutual's violations are willful [Doc. # 106, ¶ 53]; therefore, the class notice [Doc. # 72-19] shall be sent to individuals who are currently employed, or were previously employed, by State Farm Mutual

in the last three years in an operation center outside of California.

Finally, Plaintiffs request that State Farm Mutual be ordered to produce a list of all potential class members including their names, addresses, dates of employment, job title, operations center location, phone numbers, last four social security number digits, and e-mail addresses of class and collective members. Plaintiffs also request authorization to disseminate notice to the affected employees at their last known mailing and email addresses; that State Farm Mutual conspicuously post the notice in the break rooms at its Operations Centers until the opt-in period closes; and leave to publish an internet website where class members may submit a consent to join form for this case by electronically providing their name, date of birth, and last four digits of their social security number.

State Farm Mutual does not contest this request. State Farm Mutual is, therefore, ordered to produce to Plaintiffs a list of all potential collective members (i.e., individuals who are currently employed, or were previously employed, by State Farm Mutual in the last three years in an operation center outside of California) including their names, addresses, dates of employment, job title, operations center location, phone numbers, last four social security number digits, and e-mail addresses. The list must be produced within twenty days from the date of this order in a usable format.

Plaintiffs' proposed notice for the FLSA claim is also approved. Plaintiffs may disseminate the notice, subject to the stated revisions above, to potential FLSA class members at their last known mailing and e-mail addresses, and State Farm Mutual is ordered to conspicuously post the notice in the break rooms at its Operations Centers until the opt-in

period closes.  FLSA class members shall have 90 days after the notice is sent to submit their consent to join the case.

## IV.	State Farm Mutual's Motion to Dismiss

In their Second Amended Complaint, Plaintiffs alleged that all employees of State Farm Fire who worked at State Farm Mutual's Operation Centers and were subject to State Farm Mutual's pay and timekeeping policy are employees of State Farm Mutual as well.  In other words, Plaintiffs allege that State Farm Mutual and State Farm Fire are "joint employers."  Plaintiffs alleged facts in support of this assertion, and the Court has identified these facts in Part I of this Order.

In its pending Motion to Dismiss, State Farm Mutual contends that because Plaintiffs lack standing to assert joint employer status, the Court lacks subject matter jurisdiction, and therefore that claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1). Alternatively, State Farm Mutual contends that Plaintiffs have failed to state a claim for joint employer status and therefore it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.	Whether Plaintiffs Lack Standing to Assert Joint Employer Status

State Farm Mutual argues that "[o]nly State Farm Fire employees could possibly have standing to assert joint employment claims under Plaintiffs' . . . theory, and there are no such plaintiffs in this case."  [Doc. # 111, at 13].  Neither Nobles nor Atchison are employees of State Farm Fire.  However, standing issues "must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs."  *Payton v. County of*

*Kane*, 308 F.3d 673, 680 (7th Cir. 2002). Here, unnamed class members of the certified classes and collective include State Farm Fire employees who would have standing to bring claims under State Farm Mutual's status as a joint employer with State Farm Fire. Thus, the Plaintiffs in this litigation have standing to assert joint employment status for members of the class.

Two recently decided cases in this district, *Gilmor v. Preferred Credit Corp.*, No. 10-0189-CV-W-ODS, 2011 WL 111238 (W.D. Mo. Jan 13, 2011), and *Wong v. Bann-Cor Mortgage*, No. 10-1038-CV-W-FJG, 2011 WL 2314198 (W.D. Mo. June 9, 2011), also concluded that the court had subject matter jurisdiction over claims that could be brought by members of the certified class, but could not have been brought by any of the named plaintiffs. However, as a practical matter, it may be prudent to have a specific named Plaintiff whose named employer is State Farm Fire. *See Gilmor*, 2011 WL 111238, at *7. Therefore, Plaintiffs shall file an appropriate motion to designate such an employee prior to the close of discovery on the merits.

## B. Whether Plaintiffs' Joint Employment Claim Should be Dismissed for Failure to State a Claim

On a motion to dismiss, the Court construes the complaint liberally, in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a short and plain statement is to provide defendants with "fair notice of what the . . . claim

is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). On a motion to dismiss, a court's evaluation of a plaintiff's complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

"To determine whether an individual or entity is an employer, courts analyze the economic reality of the relationship between the parties." *Loyd v. Ace Logistics, LLC*, No. 08-CV-00188-W-HFS, 2008 WL 5211022, at *3 (citation omitted). Although the Eighth Circuit has not yet stated a test to determine joint employer status, four factors are typically examined by courts to make this determination. They are: "whether the alleged employer: (1) had the power to hire and fire the plaintiff; (2) supervised and controlled plaintiff's work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained plaintiff's employment records." *Id.* at *3 (citing *Schubert v. BethesdaHealth Grp., Inc.*, 319 F. Supp. 2d 963, 971 (E.D. Mo. 2004)).

State Farm Mutual asserts that Plaintiffs have failed to allege the elements of joint employer status or single enterprise status. This argument rests on the contention that because all of the named plaintiffs in the litigation are not employees of State Farm Fire, none of their allegations concern State Farm Mutual's power to hire or fire any plaintiff who is an employee of State Farm Fire. [Doc. # 111, at 7].

The Court finds that this argument is a re-characterization of State Farm Mutual's standing argument. As previously stated, Plaintiffs in this case include the certified classes. *See Gilmor*, 2011 WL 111238, at *6 (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). Plaintiffs in this case include State Farm Fire employees who were subject to State Farm Mutual's policies; and the Second Amended Complaint alleges that State Farm Mutual had the power to hire or fire *them.*

Second, State Farm Mutual asserts that even if the Court finds that Plaintiffs have alleged the elements of joint employment status, Plaintiffs' factual allegations are "broad, unsupported statements" that do not provide the required factual support for Plaintiffs' joint employment claim. [Doc. # 111, at 9]. The Court disagrees with State Farm Mutual's characterization of Plaintiffs' allegations. The Plaintiffs allege in their Second Amended Complaint that (1) the human resources department in State Farm Mutual retains the power to promote, retain, and discipline State Farm Fire employees, (2) State Farm Fire employees' work and compensation are subject to State Farm Mutual's written pay and timekeeping policy, and (3) State Farm Mutual's and State Farm Fire's timekeeping records are housed together, which the Court liberally construes to imply that State Farm Mutual maintains State Farm Fire's timekeeping records.

For these reasons, the Court finds that Plaintiffs have sufficiently stated a joint employer claim.

## III.  Conclusion

Accordingly, it is hereby ordered that

State Farm Mutual's Motion to Strike [Doc. # 89] is DENIED. Plaintiffs' Motion for Rule 23 Certification of Missouri and Oklahoma Classes and for Conditional Collective Action Certification [Doc. # 72] is GRANTED. State Farm Mutual's Motion to Dismiss [Doc. # 110] is DENIED.



 s/ Nanette K. Laughrey     
NANETTE K. LAUGHREY
United States District Judge

Dated:  August 25, 2011
Jefferson City, Missouri