IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| LISA NOBLES, Individually and on behalf of a class of others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, )<br><br>Defendant. ) | Case No. 10-04175-CV-C-NKL |

**DEFENDANT'S SUGGESTIONS IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION OF ORDER (Doc. 128) REGARDING MISSOURI STATE LAW STATUTE OF LIMITATIONS, DATA PRODUCTION REGARDING PUTATIVE PLAINTIFFS AND APPROVAL OF NOTICES**

Defendant State Farm Mutual Automobile Insurance Company ("SFMAIC") respectfully moves this Court for its Order reconsidering, amending or modifying its August 25, 2011 Order (the "August 25th Order") certifying two state law class actions and conditionally certifying a nationwide collective action under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, with respect to (i) the appropriate statute of limitations regarding Plaintiffs' Missouri class, (ii) the information SFMAIC has been ordered to produce regarding *nearly 25,000 putative plaintiffs*[1] and the manner in which it is produced,[2] and (iii) approval of the Plaintiffs' proposed class and collective action notices.[3] Reconsideration and modification or amendment is warranted because (i) the Court

---

[1] SFMAIC estimates the class and collective action claims include nearly 25,000 current and former SFMAIC and SFF employees from 27 operations centers around the country. This estimate is preliminary; SFMAIC continues to identify individuals who fall within the scope of the claims certified by the Court.

[2] As discussed below, SFMAIC requests that the Court direct the parties to agree upon a third-party administrator ("TPA") to handle the notice process and order that data regarding putative plaintiffs be sent only to the TPA. SFMAIC agrees to bear the reasonable cost of facilitating notice through an agreed-upon TPA.

[3] SFMAIC's request for reconsideration of the August 25th Order does not indicate its concession to the propriety of the Order. SFMAIC concurrently seeks appellate review of the August 25th Order. Likewise, SFMAIC has moved to stay these proceedings pending the outcome of (i) this motion and (ii) SFMAIC's Petition for Review and any subsequent appeal.

applied the wrong statute of limitations to Plaintiffs' Missouri class action claims, Doc. 128 at 16, and 19 – 20, and (ii) the Court mistakenly applied erroneous standards to Plaintiffs' requests regarding data about putative plaintiffs and dissemination of Plaintiffs' proposed notices. Reconsideration would allow the Court to rectify these errors.

I. **Background**[4]

Given the complex issues involved in this matter, and that Plaintiffs concurrently sought class *and* conditional collective action certification in a single motion, SFMAIC previously made an *unopposed* request for leave to exceed the Court's normal page limits when responding to Plaintiffs' motion for class and conditional collective action certification. *See* Doc. 85. SFMAIC's request was only granted in part, and its response was limited to 30 pages. *See* Doc. 87. In light of space constraints, and because the scope of the action was unknown at the time, SFMAIC asked the Court for leave to address notice *after* the Court ruled on Plaintiffs' motions to certify. Doc. 88 at 29, n.30. Nevertheless, SFMAIC asserted that Plaintiffs' proposed notices were defective in many respects. *Id.* Moreover, SFMAIC argued that the statute of limitations regarding Plaintiffs' Missouri state law claims is two years, not the five-year period urged by Plaintiffs. *Id.*

The August 25th Order does not address SFMAIC's concerns with Plaintiffs' proposed notices. *See* Doc. 128, at 16, and 19 – 20. Likewise, the August 25th Order is silent regarding the statute of limitations applicable to Plaintiffs' Missouri state law claims. Instead, it merely orders Plaintiffs to distribute their proposed notices, which include a separate notice defining the Missouri state law class in relevant part as anyone who is "currently employed, or [was] previously employed, by State Farm in an operation center in Missouri after August 9, 2005." Doc. 128, at 4 and 16, in turn, referring to Doc. 72, Exhibit Q. *See also* Doc. 128, at 19 – 20. Finally, the August 25th Order

---

[4] A more detailed description of the procedural posture of this case, which is incorporated herein by reference, can be found in SFMAIC's Suggestions in Support Of Motion To Stay Proceedings And For Expedited Consideration, filed contemporaneously herewith.

requires SFMAIC to produce personal data about nearly *25,000* potential plaintiffs, including names, addresses, dates of employment, operations center location, phone numbers, last four social security number digits, and e-mail addresses. Because Plaintiffs' class action claims implicate the necessity of a third-party administrator ("TPA") to facilitate notices to potential plaintiffs, SFMAIC suggests that more limited data regarding putative plaintiffs be given only to a TPA for purposes of disseminating notice, thus ensuring the Court will retain control over the communications with putative plaintiffs.

SFMAIC respectfully asks the Court to reconsider its August 25th Order, and amend or modify the Order by (i) eliminating the requirement that SFMAIC produce phone numbers, last four social security number digits, and e-mail address for potential plaintiffs, (ii) limiting the distribution of notice to the use of regular mail; (iii) directing SFMAIC to produce data about potential plaintiffs solely to a third-party administrator ("TPA") that the parties should be directed to agree upon and for which SFMAIC will bear the reasonable cost; (iv) requiring the parties to meet and confer about, and jointly submit revised proposed notices; and (iv) clarifying that the statute of limitations applicable to Plaintiffs' Missouri state law claims is two years.

## II. <u>Motions for Reconsideration</u>

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration. However, under Rule 59(e), parties may move to "alter or amend a judgment" within 28 days after judgment is entered. The "limited purpose [of Rule 59(e)] is to allow the trial court to correct manifest errors of law or fact." *Sipp v. Astrue*, 641 F.3d 975, 980 (8th Cir. 2011) (citation omitted). Moreover, for several reasons, including "any other reason that justifies relief," Rule 60(b) allows parties to request relief from a "final judgment, order, or proceeding" when such requests are made "within a reasonable time." According to the Eighth Circuit, motions to reconsider "are nothing more than Rule 60(b) motions when directed at non-final orders." *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006). This Court has previously noted that "[a] district court has inherent

3

authority to reconsider interlocutory orders" and that such orders "are often reconsidered based on the practicality of the circumstances and changes in an ever-evolving record." *Garrett v. Albright*, 2008 WL 268993, *2 n.2 (W.D. Mo. Jan. 30, 2008). *See also Heubel Material Handling, Inc. v. Universal Underwriters Ins. Co.*, 2011 WL 1458654, *2 (W.D. Mo. Apr. 15, 2011). ("The Court . . . has greater discretion to grant a motion to reconsider an interlocutory order" than a motion under Rules 59(e) or 60(b)). Consequently, the basis for the motion to reconsider is irrelevant when, as in this case, a party seeks to correct manifest errors of fact or law.

### III. Argument

#### A. The Statute of Limitations Applicable to Plaintiffs' Missouri State Law Claims is Two Years

The August 25th Order does not address the proper statute of limitations for Plaintiff's Missouri state law claims. *See* Doc 128. Instead, it certifies a Missouri class dating back to August 9, 2005. *See* Doc. 128 at 4, 16, and Exhibit Q.

Missouri Revised Statute § 516.140 clearly provides that actions for the recovery of unpaid minimum wages, unpaid overtime compensation, and any amounts owed under the FLSA are governed by a *two-year* statute of limitations. Plaintiffs' Missouri state law claims sound in unpaid wages, *see* Second Amended Complaint, Doc. 106, ¶ 58 (incorporating prior allegations, including numerous allegations that SFMAIC failed to pay for all hours worked, including overtime), and are thus governed by the two year statute of limitations set forth in R.S.Mo. § 516.140. *See also Wages v. Young,* 261 S.W.3d 711 (Mo. Ct. App. 2008) (recognizing the "gravamen" of the claim dictates the applicable statute of limitations").

When responding to SFMAIC's argument regarding the applicable statute of limitations, Plaintiffs cite *Hale v. Wal-Mart Stores, Inc.*, 2005 WL 5518999 (Mo. Tr. Ct. Nov. 1, 2005), *r'vd on other grounds*, 231 S.W.3d 251, for the proposition that a 5-year statute of limitation applies to their unpaid wage claims. Doc. 95 at 10, n. 14. That case, however, is not persuasive because the Missouri state

Circuit (*i.e.*, trial) court incorrectly relied on Mo. Rev. Stat. § 516.120, a more general section applying a five-year limitations period to claims for "contracts, obligations or liabilities . . . except where a different time is herein limited." Importantly, the trial court's ruling in *Hale* pre-dated, *by three years*, the Missouri *appellate* court ruling in *Wages*. *See* 261 S.W.3d 711 (Mo. Ct. App. 2008).

In light of the foregoing, the two-year statute of limitations in R.S.Mo. § 516.140 is applicable in this case. Conversely, the statute of limitations in R.S.Mo. § 516.120 is not applicable. SFMAIC therefore requests that the Court reconsider the August 25th Order to correct its error and apply a two-year statute of limitations to Plaintiffs' Missouri state law claims.

**B.  The Ordered Data About Potential Plaintiffs is Too Broad, Duplicative Notices Are Unwarranted, and Data Should Be Sent Only to a TPA**

   **1.  The Data SFMAIC Has Been Ordered to Produce is Overly Broad**

*In Hoffman La-Roche v. Sperling*, the Supreme Court observed that the purpose of notifying putative plaintiffs of the pendency of a collective action is to provide "accurate and timely notice" of the case "so that they can make informed decisions about whether to participate." 793 U.S. 165, 170 (1989). Nevertheless, communications about class and collective actions present significant risks of abuse and, as the Supreme Court observed, "a district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Id.* at 171 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). *See also Jones v. Casey's General Stores*, 517 F.Supp.2d 1080, 1086 (S.D. Iowa. 2007) ("ex parte notice of the pendency of the present litigation carries with it the inherent risk of prejudice and allegations of impropriety").

In its August 25th Order, the Court directs SFMAIC to provide data that would allow Plaintiffs' counsel to *personally* contact putative plaintiffs regarding their participation in this matter. This could allow contact with putative plaintiffs for a whole range of reasons without Court

5

supervision. In other words, the expansive production of data causes the Court to lose control over the notice process because putative plaintiffs could be *directly* contacted by any number of means. For example, there simply is no need for Plaintiffs' counsel to have putative plaintiffs' home telephone numbers unless they intend to personally contact putative plaintiffs at their homes. Of course, such direct contact is prohibited. *See Lima v. Int'l Catastrophe Solutions*, 493 F.Supp.2d 793, 801 (E.D. La. 2007) (specifically prohibiting counsel from communicating with any potential opt in "unless the potential plaintiff communicates with them first and consents to further communication."). Moreover, the Order requiring the production of e-mail addresses is unclear – *i.e.*, has the Court ordered SFMAIC to produce *personal* e-mail addresses,[5] or putative plaintiffs' *business* e-mail addresses, including addresses belonging to SFMAIC? Production of either type of e-mail address in this case is unwarranted for reasons discussed further below.

Additionally, the required production of the last four social security number digits is unwarranted and unnecessary to accomplish appropriate notification of putative plaintiffs. Other courts in this Circuit have commonly denied requests for such information. *See Hembree v. Mid-Continent Transport, Inc.*, 2010 WL 3927764, *4 (W.D. Mo. Oct. 4, 2010) (denying request for last four social security number digits) (citing *Littlefield v. Dealer Warranty Servs.*, LLC, 679 F.Supp.2d 1014, 1018 (E.D. Mo. 2010); *Ford v. Townsends of Ark., Inc.*, 2010 WL 1433455, *9 (E.D. Ark.); and Martinez v. Cargill Meat Solutions, 265 F.R.D. 490, 501 (D. Neb. 2009)).[6]

The August 25th Order (i) is unnecessarily broad for achieving the only authorized purpose of providing adequate notice to putative plaintiffs about this case, (ii) invades the putative plaintiffs' privacy interests, and (iii) leads to potentially improper or erroneous communications by Plaintiffs' counsel. For these reasons, SFMAIC respectfully asks this Court to reconsider the August 25th

---

[5] SFMAIC does not, in the regular course of business, record its employees' personal e-mail addresses.
[6] To the extent Plaintiffs maintain they need the information to track down putative plaintiffs, as the Court in *Hembree* suggested, counsel should be directed to work together on providing notice prior to the dissemination of social security number information. *Hembree*, 2010 WL 3927764 at *4 (citation omitted).

6

Order and amend it by removing the requirement that SFMAIC produce its current and former employees' telephone numbers and e-mail addresses, both of which are unnecessary to the orderly dissemination of notice in this action and represent an invasion of putative plaintiffs' privacy.

### 2. Notice By E-mail is Not Warranted

Courts favor distribution of notice by regular, U.S. Mail *See Stickle v. SCI Western Market Support Center*, *L.P.*, 2009 WL 3241790, *7 (D.Ariz. Sept. 30, 2009) (noting that first class mail is the best practicable notice). *See also* Manual for Complex Litigation § 21.31 (4th Ed.) ("When the names and addresses of most class members are known, notice by mail usually is preferred"). Many courts have denied requests to send court-approved notices by e-mail because of concerns about unauthorized modifications and re-distribution. *See, e.g.*, *Epenscheid v. DirectSat USA, LLC,* 2010 WL 2330309, *14 (W.D.Wis. June 7, 2010) ("I agree with the reasoning of the courts suggesting caution be used in allowing email notification because of the potential for recipients to modify and re-distribute email messages). *See also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y.2007)("'Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members.'") (quoting *Reab v. Electronic Arts, Inc.,* 214 F.R.D. 623, 630 (D.Colo. 2002)); *Kuznyetsov v. West Penn Allegheny Health System*, Inc., 2009 WL 1515175, *6 (W.D.Pa. June 1, 2009) (same); *Hintergerger v. Catholic Health System,* 2009 WL 3464134, *13 (W.D.N.Y. Oct.21, 2009) (same). Perhaps recognizing they would be unable to show that notice by regular mail is insufficient, Plaintiffs did not cite any authority in support of such a proposal. *See* Doc. 72 at 27-30.

Furthermore, allowing Plaintiffs to disseminate notice by e-mail will cause the Court to lose control over the notice process and unnecessarily foster an environment for potential confusion. .The Court's control over notice to putative plaintiffs is particularly important in the present matter because Plaintiffs are pursuing a "hybrid" class and collective action. Confusion will undoubtedly

7

reign if Plaintiffs are allowed to distribute notice by e-mail and putative plaintiffs improperly redistribute notices, some of which – *e.g.*, notices regarding the state law class action notices – may not apply to recipients of the re-distributed notices.

Given the shear magnitude of this case, its unique procedural posture, and the accompanying potential for error in the notice process, SFMAIC respectfully suggests the Court should (i) reconsider the August 25th Order, which allows Plaintiffs to distribute notice by e-mail, and (ii) modify the August 25th Order by limiting notice to putative plaintiffs *via* regular mail.

### 3. Information Produced by SFMAIC Should be Sent Only to a TPA On Which the Parties Should Agree

Because Plaintiffs' state law claims have been certified as class actions, Plaintiffs will surely use a third-party administrator ("TPA") to facilitate notice to potential plaintiffs. Indeed, given the complexity of this "hybrid" suit and accompanying notice issues, as well as the sheer number of putative plaintiffs involved, it is both appropriate and worthwhile to use a TPA. *See Gandhi v. Dell Inc.,* 2009 WL 3427218, at *1 (W.D. Tex. Oct. 20, 2009) ("The weight of authority suggests that this [sending notice through a TPA] is the better approach…the Court's goal is to have the notice be as fair and impartial as possible…"). *See also In re RBC Dain Rauscher Overtime Litig.,* 703 F.Supp.2d 910, 966 (D.Minn. 2010) (finding that notice through a TPA was appropriate in a nationwide collective action and ordering the parties to meet and confer regarding selection of a TPA) and *Harris v. Vector Marketing Corp.,* 753 F.Supp.2d 996 (N.D. Cal. 2010) (ordering notice be distributed through a TPA in a class and collective action).

Additionally, protection of the potential plaintiffs' confidential information is a paramount consideration, and is particularly important to SFMAIC in light of the information the Court has ordered it to produce regarding thousands of its current and former employees.[7] As noted by the

---

[7] If the court-ordered data is provided only to an agreed upon TPA, SFMAIC is willing to bear the costs of facilitating notice through the TPA.

court in *In re American Family Mut. Ins. Co. Overtime Pay Litigation*, "use of a third-party administrator is appropriate to protect the integrity of the process and to protect the confidential information of potential opt-in plaintiffs." 2009 WL 248677, at *4 (D. Colo. Feb. 3, 2009); *accord Prentice v. Fund for Pub. Research*, WL 2729187 (N.D. Cal. Sept. 18, 2007) ("The Court agrees that using a third party is the best way to ensure the neutrality and integrity of the opt-in process."); *Russell v. Wells Fargo & Co.*, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) ("[I]t would be more appropriate to have a third-party claims administrator distribute the collective action notice"). *See also Lockhart v. County of Los Angeles*, 2008 U.S. Dist. LEXIS 53825 at *16 (C.D. Cal. July 14, 2008) (protecting private information by appointing a third-party administrator to give notice and ordering the parties to share associated costs).

Because of the complexity of the notice process in this case, and the privacy concerns implicated by the production of confidential information regarding nearly *25,000 individuals*, greater control and scrutiny by the Court regarding notice is critical in this case. The virtually unfettered control of the notice process can be easily cured by engaging the services of a TPA. SFMAIC respectfully submits the Court should reconsider the August 25th Order and require SFMAIC to produce more limited contact data and only to an agreed-upon TPA for the purpose of distributing notice, with SFMAIC bearing the reasonable cost of the TPA's services in this regard.

### 4. Duplicative Notice *Via* Posting Also is Unwarranted

Like e-mail notice, notice by posting in SFMAIC's break rooms is unwarranted. Courts have denied requests for posting notice in the workplace where there is no evidence that mailing is expected to be unreliable. *See, e.g., Martinez v. Cargill Meat Solutions,* 265 F.R.D. 490, 500-501 (D. Neb. 2009) (denying request for workplace posting where "[t]here is no evidence personal mailing will be an unreliable means of delivering notice to the putative plaintiffs."); *Morales v. Farmland Foods, Inc.,* 2009 WL 2886278, *6 (D. Neb. July 21, 2009)("[P]laintiffs' request for radio and posting methods of

notice [are] denied absent a showing of necessity for such methods or ineffectiveness of the mailed forms."); and *Phelps v. MC Communications, Inc.*, 2011 WL 3298414, *6 (D. Nev. Aug. 1, 2011) (denying request for posting in the workplace "as there is no indication that service by first class mail will be ineffective or inadequate."). SFMAIC has mailing addresses for putative plaintiffs in this case and there is no reason to believe notice by mail will be unreliable. Moreover, posting notice in the work place is inherently prejudicial to SFMAIC because it may not only be viewed by putative plaintiffs in this action, but it may be viewed by SFMAIC employees and others who are not part of this case. *See Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D.Minn. 1991). Although Plaintiffs cite two cases in support of their motion for certification in which notice was summarily ordered to be posted in a defendant's break rooms, they offer no justification for duplicative notice by posting in this case.

SFMAIC respectfully asks the Court to reconsider the August 25th Order and amend it to limit distribution of notice by regular mail.

### C. The Parties Should be Required to Meet and Confer Regarding the Content of the Notices, As Plaintiffs' Notices Are Deficient

Plaintiffs' proposed notices are deficient in many respects. *See e.g.*, Doc. 88 at 29, n.30. In order to cure these deficiencies, which are addressed more fully below, SFMAIC respectfully suggests the parties should be made to meet and confer regarding the content of the notices to putative plaintiffs. This approach is similar to, and consistent with, the approach recently followed by this Court in a conditionally certified FLSA collective action that is currently before this Court. *See Carden v. Scholastic Book Clubs, Inc.*, Case No. 2:10-cv-01112-NKL, Doc. 69. In *Carden*, the employer-defendant asked the Court to defer discussion about notice to putative plaintiffs until it ruled on Plaintiffs' motion seeking conditional collective action certification. *Carden*, Doc. 66 at 15, n. 7. The Court granted the plaintiffs' motion for conditional collective action certification, but denied the plaintiffs' request to send their proposed notices; instead, the Court ordered the parties to

10

meet and confer regarding notice issues, to submit a joint proposal, and to note any differences of opinion about the notice. *Carden*, Doc. 69 at 7. Given the deficiencies outlined below, SFMAIC asks the Court to follow the same approach here.

### 1. Heading on the First Page

The top of the first page of each of Plaintiffs' proposed notices bears the words "The United States District Court For the Western District of Missouri." This heading (i) gives putative plaintiffs the mistaken impression that the notice is a letter from the Court, or (ii) indicates judicial sponsorship or approval of the Plaintiffs' allegations. *See Martinez,* 265 F.R.D. at 499 ("[P]lacing the court name in the heading is improper because it may be misconstrued as judicial support for the plaintiff's litigation."); *Woods v. New York Life Ins. Co.,* 686 F.2d 578, 581 (7th Cir.1982) (holding notice disseminated on the court's letterhead was improper because it implied judicial approval of the case); *Jirak v. Abbott Laboratories, Inc.,* 566 F.Supp.2d 845, 851 (N.D.Ill. 2008) (holding a proposed notice with the court's name at the top of first page was inappropriate since it "could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case"). If the heading is maintained on the first page, the notice should be modified, or otherwise clarified, to remove any implication of judicial sponsorship of the Plaintiffs' allegations.

### 2. Right to Select Own Counsel

The collective action notice improperly suggests that putative collective action plaintiffs have no choice but to retain Plaintiffs' Counsel. In particular, Paragraph 15 of the collective action notice is entitled, "Do I have a lawyer in this case?" Doc. 72, Exhibit S It states, "[i]f you chose to join this lawsuit, you will be represented by the law firms Stueve Siegel Hanson LLP and Lear Werts LLP. . . Together the law firms are called Class Counsel." *Id.* Paragraph 11 further dictates that "Consent to Join" forms "*must*" be sent to Plaintiffs' counsel's offices; the consent form itself is drafted to give putative plaintiffs no option regarding representation – *i.e.*, the consent definitively states that opt-in

11

plaintiffs are represented by Plaintiffs' counsel. *Id.* Putative plaintiffs should not be improperly discouraged from engaging other counsel. *See Bowens v. Atlantic Maintenance Corp.,* 546 F.Supp.2d 55, 84 (E.D.N.Y. 2008) (citing *Hallissey v. America Online, Inc.,* 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19, 2008); and *Guzman v. VML, Inc.,*2007 WL 2994278, at *9 (E.D.N.Y. Oct. 11, 2007)). *See also Heitmann v. City of Chicago,* 2004 WL 1718420 at *3 (N.D.Ill. July 30, 2004) ("[T]he consent form should allow potential plaintiffs to elect separate counsel.").

### 3. The Proposed Notices Fail to Apprise Putative Plaintiffs of Their Discovery and Other Obligations

The collective action notice does not inform putative plaintiffs that they may, if they join this suit, be required to (i) travel to the Western District of Missouri to testify in depositions or in court, or (ii) respond to discovery requests. *See Archer Daniels Midland Co. v. AON Risk Services, Inc. of Minnesota,* 187 F.R.D. 578, 588 (D.Minn. June 7, 1999) ("[T]here is a well recognized, general rule that a plaintiff is required to make itself available for a deposition in the District in which the suit was commenced, because the plaintiff has chosen the forum voluntarily, and should expect to appear there for any legal proceedings…"); *Spencer-Flournoy v. Clark,* 2009 WL 1473951, at *1 (W.D.Mo. May 27, 2009)(denying plaintiff's motion to quash her deposition and enter protective order where plaintiff did not want to travel to Kansas City and preferred to be deposed by telephone); *Williams v. Sprint/United Management Co.,* 2006 WL 1867471 at *2-3 (D. Kan. Jan. 30, 2006) (requiring plaintiffs in a collective action to appear for deposition in the forum where suit was pending). Such warning should be, and has been, included by courts within this District and elsewhere. *See McKinzie v. Westlake Hardware, Inc.,* 2010 WL 2426310, at *4 (W.D. Mo. June 11, 2010) (finding that the "[n]otice should also advise members of the class of discovery and other obligations, as well as the need to be present in Kansas City" for depositions, hearings or trial); *Creten-Miller v. Westlake Hardware, Inc.,* 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) ("Despite plaintiff's concerns about the potential chilling effect [of adding this warning], the Court is

12

persuaded that it is reasonable and necessary to include language which informs potential plaintiffs that they may be required to travel to Kansas City."). Moreover, the notice should disclose that plaintiffs may be responsible for SFMAIC's costs if it prevails in the lawsuit. *See McKinzie,* 2010 WL 2426310, at *4 (agreeing "that plaintiff must disclose that a plaintiff may be responsible for defendant's costs if defendant prevails"); *Creten-Miller,* 2009 WL 2058734, at *4("[A]n award of costs to a prevailing defendant in an FLSA case is clearly possible and is not merely theoretical…the notice should inform recipients about the possibility that they may be responsible for court costs.").

### 4. Presence of Prohibited Solicitations and Use of Website

Plaintiffs' proposed notices include repeated, improper solicitations, including a proposed "footer" on each page inviting the reader to visit a website or call a telephone number. The text of the "footer" reads, "Questions? Visit [INSERT WEBSITE] or call [INSERT PHONE NUMBER]." The "website" and "phone number" will presumably be those maintained by Plaintiffs' counsel. Currently there is no way to discern what additional, inaccurate, and/or misleading information may be included at the referenced website. Likewise, it is not possible to know what the reader will hear when he or she calls the referenced telephone number. These repeated invitations to contact Plaintiffs' counsel, however, could be construed as prohibited solicitations of putative plaintiffs, and go far beyond the intended purpose of notice. *See Lima*, 493 F.Supp.2d at 801.

Additionally, the use of a website and/or phone number is unnecessary and duplicative. Putative plaintiffs will be sent accurate notice via U.S. Mail, directing them to where they can obtain more information. To the extent the Court allows use of a website or phone number by Plaintiffs' counsel, the Court should control the selection of a domain name and all content via pre-approval after an opportunity for SFMAIC to object to any proposed content or domain name. A website should not be allowed to include anything misleading, inaccurate or solicitous. Furthermore, if a TPA is used to facilitate notice, the TPA should also manage any website or phone number. The

Court should further direct that than any website domain name used in connection with this litigation not infringe upon or violate SFMAIC's intellectual property rights or be likely to cause confusion to persons searching the internet for information from or about SFMAIC for reasons totally unrelated to the subject litigation.

### 5. Disclaimer and SFMAIC's "Position"

The proposed notices do not mention, until paragraphs 6 and 7 respectively, that (i) SFMAIC denies it has improperly paid any current or former employees, and (ii) the Court has not yet decided the merits of this action. These important statements should be included in, or combined with, the description of Plaintiffs' claims - including the bullet points that are currently on the first page of Plaintiffs' notices. *See Martinez,* 265 F.R.D. at 499 (ordering that disclaimers be moved to the heading of the notice and placed directly after the case name, "[t]o avoid any appearance of endorsing the plaintiffs' claims"); *Adams v. Inter-Con Security Systems, Inc.,* 242 F.R.D. 530, 540 (N.D.Cal. 2007) ("The front page of the notice…states that the court has not ruled on the merits of the lawsuit, but this statement should be bolded and put at the top of front page below the court caption").

### 6. Other Deficiencies

Plaintiffs' notices are rife with additional deficiencies, such as: (i) the failure to include defense counsel's contact information, *see, e.g.*, *Guzman v.VLM, Inc.*, 2007 U.S. Dist. LEXIS 75817, at *24 (E.D.N.Y. Oct. 11, 2007) and *Cheesman v. Nexstar Broadcasting Group, Inc.*, No. 07-1126, 2008 WL 2225617, at *3 (S.D. Ind. May 27, 2008); (ii) an overly lengthy opt-in period; (iii) the lack of an option to directly send opt-in forms to the Court; (iv) the use of self-addressed, stamped envelope that encourages putative plaintiffs to join the action; (v) the lack of an opt-out form enclosed with the class action notices; and (vi) problems with vague, imprecise and

14

confusing language, such as the reference on the first page of the <u>class</u> action notices to the Court having "*conditionally certified* this lawsuit to proceed as a *collective action*" (emphasis added).

Given the multitude of deficiencies in the proposed notices, SFMAIC asks the Court to reconsider the August 25th Order and require the parties to (i) meet and confer regarding proposed notices, and (ii) jointly submit proposed notices, noting any differences in opinion regarding proposed notice language.

## IV.    Conclusion

SFMAIC respectfully asks the Court to reconsider (i) the appropriate statute of limitations regarding Plaintiffs' Missouri class, (ii) the data SFMAIC has been ordered to produce regarding *nearly 25,000 putative plaintiffs* and the manner in which it is produced, and (iii) approval of the Plaintiffs' proposed class and collective action notices. Reconsideration and modification or amendment as set forth more fully, *supra*, is warranted because (i) the Court erroneously applied the wrong statute of limitations to Plaintiffs' Missouri class action claim. Doc. 128 at 16, and 19 – 20, and (ii) the Court mistakenly applied erroneous standards to Plaintiffs' requests regarding data about putative plaintiffs and dissemination of Plaintiffs' proposed notices.  For all the foregoing reasons, SFMAIC requests that the Court amend or modify its August 25th Order by (i) eliminating the requirement that SFMAIC produce phone numbers, last four social security number digits, and e-mail address for potential plaintiffs, (ii) limiting the distribution of notice to the use of regular mail; (iii) directing SFMAIC to produce data about potential plaintiffs solely to a TPA that the parties should be directed to agree upon and for which SFMAIC will bear the reasonable cost; (iv) requiring the parties to meet and confer about, and jointly submit revised proposed notices; and (iv) clarifying that the statute of limitations applicable to Plaintiffs' Missouri state law claims is two years.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.

/s/ Patrick F. Hulla
Patrick F. Hulla, #41745
Chris R. Pace, #47344
Sara B. Anthony, #59040
Justin M. Dean #48647
Park Central Plaza
4717 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 471-1301
(816) 471-1303 *(Facsimile)*
patrick.hulla@ogletreedeakins.com
chris.pace@ogletreedeakins.com
sara.anthony@ogletreedeakins.com
justin.dean@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANT**

16

Case 2:10-cv-04175-NKL    Document 135    Filed 09/08/11    Page 16 of 17

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 8th day of September, 2011, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| George A. Hanson<br>Bradley T. Wilders<br>Norman E. Siegel<br>STUEVE SIEGEL HANSON LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112<br>hanson@stuevesiegel.com<br>wilders@stuevesiegel.com<br>siegel@stuevesiegel.com | Bradford B. Lear<br>Todd C. Werts<br>Sander C. Sowers<br>LEAR WERTS LLP<br>2003 West Broadway, Suite 107<br>Columbia, MO 65203<br>lear@learwerts.com<br>werts@learwerts.com<br>sowers@learwerts.com |

**ATTORNEYS FOR PLAINTIFFS**

/s/ Patrick F. Hulla
**ATTORNEY FOR DEFENDANT**

10915915.4 (OGLETREE)